UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANGELA JONES as Special Administrator ) of the Estate of Suzanne Anderson, ) ) Plaintiff, ) ) v. ) ) THOMAS B. RADEY Clerk's Entry of ) Default 12/10/2021, ) ) Defendant. ) | No. 1:21-cv-00163-JPH-TAB |

**ORDER ON SANCTIONS**

The Court held a damages and sanctions hearing on October 4, 2023, and took the issue of sanctions under advisement. Dkt. 66. For the reasons that follow, the Court **discharges** the show cause order, dkt. 45, with respect to Mr. Radey and **imposes sanctions** with respect to Mr. Lovern.

**I.**
**Facts and Background**

After the Clerk entered default against Mr. Radey in December 2021, the Court set a damages hearing for April 13, 2022. Dkts. 33; 35. One week before that hearing, Mr. Lovern entered his appearance on behalf of Mr. Radey and filed a motion to vacate the damages hearing. Dkts. 38, 39. The Court granted that motion, dkt. 40, and Mr. Radey then filed a motion to set aside default. Dkt. 41. That motion included an affidavit signed by Mr. Radey attesting that "he had no knowledge" of this lawsuit prior to the entry of default on December 10, 2021. Dkt. 41-1 at 1, ¶ 6.

1

In opposition to the motion to set aside default, Plaintiff's counsel, Eric Pavlack, argued that Mr. Radey's affidavit was false. Dkt. 44 at 2. Mr. Pavlack cited Mr. Radey's June 2022 answers to interrogatories in which he said that he first learned about the lawsuit when his brother sent him the "lawsuit paperwork" on June 20, 2020. Dkt. 44-3 at 3, ¶ 4. Plaintiff's response also cited Mr. Radey's interrogatory responses, which were signed and dated June 8, 2022, admitting that on July 7, 2020, he had spoken with Mark Davis of AON Insurance Company regarding the lawsuit. Dkt. 44-3 at 2–3, ¶ 2. Mr. Davis sent an email to Mr. Pavlack on that date that said, "Mr. Radey has been calling my office regarding the complaint, in fear he may have a default judgment entered against him." Dkt. 44-2 at 1. Mr. Radey acknowledged in his answers to discovery requests that he contacted Mr. Davis regarding the complaint. Dkt. 44-3 at 3, ¶ 3.

Separate from Plaintiff's response to Mr. Radey's motion to set aside default, Mr. Pavlack sent Mr. Lovern an email on June 8, 2022, requesting that he withdraw the motion to set aside judgment, or notify the court that the affidavit contained false testimony:

From: **Eric Pavlack** eric@pavlacklawfirm.com 📎
Subject: Re: Estate of Anderson v. Radey
Date: June 8, 2022 at 3:50 PM
To: lovernlaw@aol.com
Cc: Colin colin@pavlacklawfirm.com

EP

Steven,

Thank you for providing these discovery responses.

I would like you and your client to seriously consider withdrawing the motion or, at a minimum, notifying the court that the affidavit submitted in support contains objectively false testimony.

In the affidavit, Mr. Radey testified:

> 6.   That I had no knowledge of a lawsuit being filed against me by the Plaintiff prior to when I was Defaulted on December 10, 2021.

Yet, in his sworn interrogatory answers he admits that he knew about the lawsuit against him on June 20, 2020:

> 4.   When and how did you first learn about any lawsuits related to
>
> your collision with Suzanne Anderson that identified you as a party
>
> defendant?
>
>      ANSWER: My brother sent me lawsuit paperwork that I received on
>
> June 20, 2020.

Your client likely perjured himself when he signed the affidavit that was submitted to the court. And while I assume you were not aware of his false statement when you filed this affidavit, you now know that it contains a false statement. Indiana Rule of Professional Conduct 3.3, Candor Toward the Tribunal, provides, in relevant part:

> (a) A lawyer shall not knowingly:
>
>      (1) make a false statement of fact or law to a tribunal or **fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer**;
>
>      ***
>
>      (3) offer evidence that the lawyer knows to be false. **If a ... lawyer's client ... has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal... .**"

Please let me know if you intend to withdraw the motion or, alternatively, to take other corrective action to notify the court of the false statement in the affidavit that you filed.

Thanks,
Eric

Dkt. 44-4; 44-3 at 5, ¶ 12.  When Mr. Lovern did not respond, *id.* at 6, ¶ 13,

15, Mr. Pavlack sent him another email on June 21, 2022, asking Mr. Lovern

to inform him of "[his] intentions regarding the objectively false statement in

the court record before we prepare our response to the motion to set aside."

Dkt. 44-5 (follow up email from Mr. Pavlack).  Mr. Lovern did not respond to

either of Mr. Pavlack's emails.

Approximately three months passed between Mr. Pavlack's emails and

the Court's ruling on the motion to set aside default, dkt. 45 (September 26,

2022).  During that time, Mr. Lovern did not withdraw the motion to set aside default or take any steps to correct the record with respect to the principal evidence cited in the motion—Mr. Radey's testimony that "he had no knowledge" of this lawsuit prior to the entry of default on December 10, 2021, dkt. 41-1 at 1, ¶ 6.

The Court denied Mr. Radey's motion to set aside default and ordered Mr. Radey and Mr. Lovern to show cause as to why the Court should not impose sanctions.  Dkt. 45.  Mr. Radey and Mr. Lovern responded:

> [The statement] was not false at the time that it was made, it was incorrect.  Defendant would argue that a false statement would be a statement that was made knowing that the statement was not correct at the time the statement was made.  An incorrect statement would be one that the Defendant believed was true at the time, but later learned that the statement was not correct.
>
> When defendant signed the affidavit, he did not recall his conversations with Mr. Davis that occurred approximately 1 ½ years earlier.  At the time the affidavit was prepare [sic] and submitted to the Court, Counsel for Mr. Radey had never heard of Mr. Davis and knew nothing of these conversations.  Counsel for Mr. Radey also relies on his Client to provide accurate information when signing an affidavit.

Dkt. 47 at 1–2, ¶¶ 1–2.  Mr. Lovern further argued that Mr. Radey's "incorrect, not false" statement "was corrected in [Mr. Radey's] responses to Plaintiff's Interrogatories which was his first opportunity to correct the statement once it was known it was incorrect."  *Id.* at 2, ¶ 5.

The Court set a damages and sanctions hearing, requiring Mr. Radey and Mr. Lovern to appear in person.  Dkt. 64.  Mr. Lovern, who appeared at the hearing without Mr. Radey, had learned over a month before the hearing that Mr. Radey did not intend to appear, despite the Court's order.  Mr. Lovern

admitted he had not thought to inform the Court Mr. Radey would be absent. The Court took sanctions under advisement and awarded damages and expenses to the Estate.  Dkts. 66; 67.

## II.
## Applicable Law

By presenting a pleading to the court, an attorney "certifies to the best of the person's knowledge . . . the factual contentions have evidentiary support." *See* Fed. R. Civ. P. Rule 11(b)(4).  Rule 11(b) "is principally designed to prevent baseless filings." *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020).  "If the court determines that a lawyer or party has violated Rule 11(b), the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.*; Fed. R. Civ. P. 11(c).  Any sanction imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and can include fines, "nonmonetary directives," or payment to the opposing party.  Fed. R. Civ. P. 11(c)(4).

## III.
## Analysis

The Court ordered Mr. Lovern and Mr. Radey to show cause why they should not be sanctioned because (1) Mr. Radey signed an affidavit containing false statements; and (2) Mr. Lovern "knew of the false statements [in Mr. Radey's affidavit] yet took no responsive action even after the Estate's counsel brought this issue to his attention and asked him to withdraw the motion or correct the record."  Dkt. 45 at 7.

5

Regarding Mr. Radey, the Court declines to impose sanctions. Although Mr. Radey submitted a false affidavit to the Court and failed to appear despite being ordered to do so, he has already been found personally liable for over $300,000 in damages and fees, which he now owes to the Estate. Dkt. 67. Moreover, Mr. Radey is unlikely to appear again in a federal district court, so deterrence is not a consideration. The Court therefore **discharges** the show cause order with respect to Mr. Radey.

Regarding Mr. Lovern, the Court concludes that sanctions are warranted. The facts demonstrate that, contrary to Mr. Radey's sworn statement, Mr. Radey knew of the lawsuit long before December 2021. Nearly a year and half before the default was entered, Mr. Radey had received a copy of the complaint and other papers related to the lawsuit. Dkt. 44-3 at 3, ¶ 4. Shortly thereafter, Mr. Radey had a telephone conversation with a representative from AON Insurance regarding his concerns about having a default entered against him. Dkt. 44-3 at 3, ¶ 3. Mr. Lovern's argument that Mr. Radey forgot having learned about the lawsuit, despite having seen the complaint and spoken with a representative of AON Insurance regarding his concern about having a default entered against him, dkt. 47 at 1-2, is simply not credible.

Mr. Lovern disclaims any responsibility for the accuracy of Mr. Radey's statement, arguing that he "knew nothing" of Mr. Radey's conversations with Mr. Davis and that he "relies on his Client to provide accurate information when signing an affidavit." Dkt. 47 at 1–2. Even giving Mr. Lovern the benefit of the doubt that at the time he filed the motion to set aside default he had a

good-faith basis to believe Mr. Radey's statement, however, Mr. Lovern still had an ongoing affirmative duty to investigate the facts and correct the record. *See* Fed. R. Civ. P. 11(b); *see also* Indiana Rules of Professional Conduct 3.3 ("A lawyer shall not knowingly . . . fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."); *Littler v. Martinez,* No. 2:16-cv-472-JMS-DLP, 2020 WL 42776, at *27–33 (S.D. Ind. Jan. 3, 2020) (finding Rule 11 "required [counsel] to at least investigate [the issue] further when presented with ostensibly contradictory evidence" and imposing sanctions on counsel for failing to do so).  After Mr. Lovern filed the motion to set aside based on Mr. Radey's affidavit, Mr. Pavlack provided Mr. Lovern with detailed facts demonstrating that the critical statement in Mr. Radey's affidavit was false.  Dkt. 44 at 6 (screenshot of email).  Mr. Lovern did not respond and, despite now knowing that the affidavit's factual contentions clearly "lacked evidentiary support," did not take any corrective action. Mr. Pavlack again asked Mr. Lovern to correct the record and again, Mr. Lovern did nothing in response.  Dkt. 44 at 6, ¶ 4.

In response to the Court's show cause order, rather than admitting a misstep or lapse in judgment, Mr. Lovern instead chose to defend his conduct. Mr. Lovern characterized his client's statement as "incorrect" but not "false," dkt. 47 at 1, ¶ 1, and argued that the interrogatory responses themselves served as a correction and no additional corrective action was needed, even though the affidavit with the false statement remained on the docket as the

principal evidence supporting the motion to set aside default.  Dkt. 47 at 2, ¶ 4; *see* dkt. 41-1 (the affidavit containing the false statement).

Between June and September 2022, Mr. Lovern had ample opportunity to further investigate the veracity of Mr. Radey's affidavit and correct the record accordingly but didn't.  Under Rule 11, the burden was on Mr. Lovern to correct the record.  *See Littler*, 2020 WL 42776, at *28 ("It is [the attorney's] obligation [to] ensure that she has reasonably investigated the factual contentions presented to the Court, and after such investigation reveals she has made a false assertion of fact, it is her obligation to fully and frankly correct these false assertions *before* the Court points them out.").  Yet he failed to do so even after receiving two emails from opposing counsel and a show cause order from the Court.  Mr. Lovern's course of conduct with respect to Mr. Radey's affidavit therefore violated Rule 11(b) and the Court finds that sanctions against Mr. Lovern are warranted.

In fashioning an appropriate sanction, the Court has considered the need for deterrence as well as the nature and extent of the misconduct.  Mr. Lovern is a member of the bar who represents clients in court proceedings.  Therefore, there is a need for the sanctions imposed to deter Mr. Lovern and others from engaging in similar conduct in the future.  The Court concludes that a "nonmonetary directive" designed to provide Mr. Lovern with the tools necessary to comply with Rule 11 and other ethical obligations while representing clients in federal court is a sufficient and proportional sanction.  *See* Fed. R. Civ. P. 11(c)(4) (limiting sanctions to that which deters conduct);

*Vandeventer v. Wabash Nat'l Corp.*, 893 F. Supp. 827, 833 (N.D. Ind. 1995) (allowing sanctioned attorneys to avoid a monetary fine if they attend continuing legal education (CLE) seminars on relevant topics).  Finding that Mr. Lovern would benefit from CLE seminars on the topics of Rule 11, federal litigation and practice, professionalism, and the duty of candor toward the tribunal, Mr. Lovern must attend a total of six (6) hours of CLE credits within one or more of these areas.  By July 4, 2024, he must have completed the CLE credits and filed a notice attesting to the completion of these hours along with relevant receipts or materials from the CLE courses.

## IV.
## Conclusion

The show cause order is **discharged** with respect to Mr. Radey. Regarding Mr. Lovern, the Court imposes the following sanction: Mr. Lovern **SHALL** complete six (6) hours of CLE programming on the topics of federal litigation and practice, professionalism, Rule 11, and the duty of candor toward the tribunal.  Mr. Lovern **SHALL** file a notice with the Court by July 4, 2024 listing the CLE sessions attended and the corresponding credit hours. Receipts, attendance forms, and any other relevant materials shall be attached as supporting exhibits.

**SO ORDERED.**

Date: 1/4/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel.